FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jun 25, 2019

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SHELLEY G.,[1] <br><br>                Plaintiff, <br><br>     vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>                Defendant. | No. 4:18-cv-05053-MKD <br><br> ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT <br><br> ECF Nos. 14, 18 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 18. The parties consented to proceed before a magistrate judge. ECF No. 4. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court grants Plaintiff's motion, ECF No. 14, and denies Defendant's motion, ECF No. 18.

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them only by their first names and the initial of their last names.

ORDER - 1

# JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner

considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that she performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other

work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that 1) the claimant is capable of performing other work; and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On February 3, 2014, Plaintiff applied for Title II disability insurance benefits, and on January 15, 2014, applied for Title XVI supplemental security income benefits, both applications alleging a disability onset date of December 31, 2011.  Tr. 331-47.  The applications were denied initially, Tr. 213-24, and on reconsideration, Tr. 227-37.  Plaintiff appeared before an administrative law judge (ALJ) on October 18, 2016, and January 27, 2017.  Tr. 60-115.  On February 16, 2017, the ALJ denied Plaintiff's claim.  Tr. 27-55.

At step one of the sequential evaluation process, the ALJ found Plaintiff, who met the insured status requirements through June 30, 2017, has not engaged in substantial gainful activity since December 31, 2011.  Tr. 32.  At step two, the ALJ found that Plaintiff has the following severe impairments:  degenerative disc

disease of the lumbar spine (status/post-fusion surgery), pain disorder, depressive disorder, anxiety disorder, and post-traumatic stress disorder.  Tr. 33.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 34.  The ALJ then concluded that Plaintiff has the RFC to perform sedentary work with the following limitations:

> [S]he can never climb ladders, rope, or scaffolding.  She can occasionally climb ramps and stairs.  She can occasionally balance, stoop, kneel, crouch, and crawl.  She can understand, remember, and carry out simple tasks, as well as well-learning and familiar complex tasks.  She can perform such tasks for two-hour intervals, with normal breaks, over an eight-hour workday.  She can have superficial brief interactions with the general public.  She can have occasional contact and routine social interactions with coworkers and supervisors.  She needs a routine and predictable work environment.

Tr. 37.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 45.  At step five, the ALJ found that, considering Plaintiff's age, education, work experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as, table worker, semi-conductor wafer breaker, and circuit board touch-up screener.  Tr. 46.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of December 31, 2011, though the date of the decision.  Tr. 46.

On February 22, 2018, the Appeals Council denied review of the ALJ's decision, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ conducted a proper step-two analysis;

2. Whether the ALJ properly evaluated the medical opinion evidence;

3. Whether the ALJ properly evaluated Plaintiff's symptom claims; and

4. Whether the ALJ conducted a proper step-five analysis.

ECF No. 14 at 5.

## DISCUSSION

**A. Step Two: Severe Impairments**

Plaintiff contends the ALJ erred at step two by failing to identify her trigger thumb as a severe impairment. ECF No. 14 at 8-10. To show a severe impairment, the claimant must first establish a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20

ORDER - 8

C.F.R. §§ 404.1521, 416.921.  Then, the claimant must establish that the impairment is severe, i.e., it significantly limits the claimant's physical or mental ability to do basic work activities, such as carrying or handling.  20 C.F.R. §§ 404.1521, 416.921; Soc. Sec. Ruling (SSR) 85-28 at *3.  In comparison, an impairment is non-severe if "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  SSR 85-28 at *3.

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, the ALJ found that Plaintiff did not have a medically determinable impairment in her right thumb and that, even if she did, this condition did not impact her ability to work.  Tr. 33-34.  The ALJ erred.  First, the ALJ erred by finding that Plaintiff's trigger thumb was not a medically determinable impairment. Dr. Arthur Thiel, a specialist with Benton Franklin Orthopedic Associates to whom Plaintiff was referred, examined Plaintiff's hands on several occasions and

diagnosed Plaintiff with stenosing tenosynovitis of the flexor policis longus, or trigger thumb, on her right hand. Tr. 973. This diagnosis was based on Dr. Thiel's examinations of Plaintiff from March to October 2016, including observing soreness and pain on palpation to the A1 pulley, as well as symptom relief with injections to the flexor policis longus tendon sheath. Tr. 973-77, 1080-82. Because Plaintiff's spinal cord stimulator prevented the use of an MRI to diagnose Plaintiff's trigger thumb, Dr. Thiel diagnosed Plaintiff based on his physical examinations and the lack of findings on the x-rays that would support a different cause for Plaintiff's hand symptoms. Tr. 975-76. It was not the ALJ's role to discount the specialist's diagnosis of trigger thumb based on the absence of noted triggering when Dr. Thiel diagnosed Plaintiff with trigger thumb absent triggering. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). Based on the medical record, trigger thumb was a medically determinable impairment.

The ALJ further erred in her finding that Plaintiff's trigger thumb was not a severe impairment. Beginning in September 2015, Plaintiff complained of pain in her wrists and thumbs (right greater than left), when engaging in fine motor activities and gripping tightly. Tr. 867. Dr. Stephen Dechter diagnosed Plaintiff with carpometacarpal arthritis and treated Plaintiff with a steroid injection, which

Plaintiff reported helped relieve symptoms for a while.  Tr. 1029-34.  The pain

returned, along with some atrophy and numbness.  Tr. 973-77, 1080.  In March

2016, Heather Phipps, D.O., prescribed Plaintiff a wrist brace.  Tr. 977.  Then

Plaintiff was treated by Dr. Thiel, who diagnosed Plaintiff with trigger thumb, and

in April, May, August, and October 2016 Plaintiff was given steroid injections

again.  Tr. 973-77, 1080.  While Plaintiff was noted with good functional range of

movement in her right hand, the record reflects the medical providers considered

Plaintiff's trigger thumb to be sufficiently serious as to require a wrist brace and

continued steroid injections, notwithstanding the pain medication that Plaintiff was

on for her lumbar condition.  Accordingly, while the ALJ accurately identified that

the medical record did not identify functional limitations of record, resulting from

Plaintiff's trigger thumb, the record contains observations of pain and Plaintiff's

reported limitations in gripping with her right hand.[2]  Tr. 103-04.

---

[2] In June 2017 (after the ALJ's decision but before the Appeals Council's

decision), Dr. Sahota and PAC Woolf opined that Plaintiff should be limited to

frequent handling of objects with fingers.  Tr. 9-10.  The Appeals Council

determined the June 2017 opinion did not relate to the period at issue and therefore

this opinion is not part of the Court's substantive review.  Tr. 2.  *See Brewes v.*

*Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012); *Ruth v.*

Given that this matter is remanded for reconsideration of the medical evidence as discussed below, on remand, the ALJ is directed to reconsider the evidence related to Plaintiff's trigger finger. The ALJ is directed to develop the medical record with either a consultative examination or testimony from a medical expert to assess whether Plaintiff's trigger thumb is a severe impairment and whether it necessitates a gripping limitation in the RFC.

**B. Medical Opinion Evidence**

Plaintiff contends the ALJ improperly considered the opinions of Arthur Cain, M.D. and Thomas Genthe, Ph.D. ECF No. 14 at 14-17.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining physicians)." *Holohan v.*

_____

*Berryhill*, No. 1:16–CV–0872–PK, 2017 WL 4855400 (D. Or. Oct. 26, 2017) (recognizing that new evidence rejected by the Appeals Council does not become part of the administrative record subject to the court's substantial evidence review). Moreover, Plaintiff did not challenge the Appeals Council's rejection of this evidence and therefore waived any argument for purposes of this appeal. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

ORDER - 12

*Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a nonexamining physician's opinion. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216. The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

ORDER - 13

### 1.  Dr. Cain

Dr. Cain treated Plaintiff during the relevant period.  *See, e.g.*, Tr. 521 (Sept. 2011: noting that Dr. Cain was Plaintiff's new physician); Tr. 1078-79 (Sept. 2016).  In January 2014, Dr. Cain completed a Physical Function Evaluation and checked a box indicating that Plaintiff could perform "sedentary work" as defined on the form and also was limited in "standing for a long time, sitting for a long time, bending, twisting, lifting, squatting, [and] climbing."  Tr. 685-87.  In the fall of 2016, Dr. Cain diagnosed Plaintiff with chronic anxiety, chronic low back pain, and insomnia, Tr. 1079, and opined that Plaintiff had:

> Limitations in walking, maximum 2 blocks.  Limitation in walking stairs.  No bending over, squatting. Limited crawling. Limited twisting.  Maximum 10 pounds lifting, carrying, pushing and pulling. Cannot vacuum, clean toilets, etc.  Unable to do dishes.  Needs assistance getting laundry in and out of washer/dryer.  Maximum duration in car 45 minutes.  Can't fly.  Limited overhead reach, can't use a ladder.  Cannot pick up items from floor.

Tr. 1078.  The ALJ assigned some weight to Dr. Cain's 2014 opinion and minimal weight to Dr. Cain's October 2016 opinion.  Tr. 42.

The only other medical opinions of record[3] as to Plaintiff's physical functional abilities are from nonexamining sources:  Dr. Olegario Ignacio, Jr.

_____

[3] As noted *supra*, the June 2017 opinion limiting Plaintiff to less than two hours of sitting, standing, and walking, along with a need to rotate positions, is not part of

ORDER - 14

opined in May 2012 that Plaintiff could perform light work, Tr. 133-34, 146-47, and Dr. Norman Staley opined in August 2014 that Plaintiff could perform sedentary work, Tr. 191-92, 206-07. For purposes of this analysis, the Court assumes that Dr. Ignacio's and Dr. Staley's nonexamining opinions are supported by substantial evidence. *See Andrews*, 53 F.3d at 1039, 1041. Therefore, to the extent Dr. Cain's opinions were inconsistent with these nonexamining opinions, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Cain's opinions. *See Bayliss*, 427 F.3d at 1216.

### i.    2014 Opinion

The ALJ accepted Dr. Cain's opinion that Plaintiff was able to perform sedentary work but discounted his opinion that Plaintiff needed to rotate positions because the opinion was inconsistent with the objective medical evidence. Tr. 42. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). An ALJ may discredit a physician's opinion that is unsupported by the record as a whole. *Batson*, 359 F.3d at 1195. Here, the ALJ's finding that the medical evidence failed to reflect that Plaintiff's spinal impairment had worsened

_____

this Court's substantial evidence review because the Appeals Council rejected the opinion as not related to the relevant period. Tr. 9-10.

ORDER - 15

to the extent that it required her to frequently alternate between sitting and standing is not based on substantial evidence. Tr. 42. The objective medical evidence reflects significant spinal impairments that worsened. Tr. 666-69, 685-89, 690-92. For instance, the August 2013 imaging reflected abnormal uptake in the left posterior lumbar spine at L4-5 and L5-S1. Tr. 666. A month after this imaging, which was reviewed by Dr. Cain, Dr. Cain recommended that Plaintiff participate in a chronic pain program. Tr. 705. Dr. Cain observed a slowed gait at the December 2013 appointment, along with tenderness to palpation to the left of the Posterior Superior Iliac Spine. Tr. 766. Based on the imaging and Dr. Cain's observations and recommendations in the months leading up to his January 2014 opinion, the ALJ's finding that Dr. Cain's opinion was not supported by the objective medical evidence is not supported by substantial evidence on this record.

Second, the ALJ discounted Dr. Cain's rotate-positions opinion because the opinion was vague and unexplained. Tr. 42. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported by medical findings. *Bray*, 554 F.3d at 1228. Here, the ALJ found that Dr. Cain did not give any explanation for restricting Plaintiff's standing and sitting. Tr. 42. On the Physical Functional Evaluation form, Dr. Cain listed that Plaintiff's back pain had been treated by a spinal fusion of the T11 to L3, facet rhizotomy, steroid injections, physical therapy, epidural injections, and pain management. Tr. 685. Dr. Cain

indicated that he "enclosed" the laboratory, imaging, range of motion, and other diagnostic test results. Tr. 686. Based on the facsimile heading associated with this form and its attachments, the record reflects that the following records were enclosed: 1) Plaintiff's August 2013 NM Bone Scan SPECT revealing increased uptake in the left posterior lateral lumbar spine at L4-5 and L5-S1, Tr. 688-89; 2) the January 28, 2013 imaging of the lumbar spine revealing the spinal fusion from T11 to L3, slight hypertrophic degenerative arthritis at the L3-4 level, and moderate facet degeneration at L3-4 through L5-S1, Tr. 690-92; and 3) the July 2011 MRI, Tr. 693-94. The attached imaging, diagnosed conditions, and his prior treating observations served as the basis for Dr. Cain's opinion. On this record, the ALJ's finding that Dr. Cain's opinion was vague and unexplained is not supported by substantial evidence.

Third, the ALJ also discounted Dr. Cain's rotate-position opinion because it appeared to be based on Plaintiff's subjective reporting of pain symptoms, which the ALJ found unreliable. Tr. 42. However, the ALJ also discounted Plaintiff's symptom complaints as inconsistent with the medical evidence. Tr. 38. Because the Court finds the ALJ misweighed the medical evidence as to Plaintiff's spinal conditions, on remand, the ALJ is to reevaluate whether Dr. Cain's opinion was more heavily based on Plaintiff's self-reports than on clinical observations. *See*

*Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-200 (9th Cir. 2008).

Fourth, the ALJ discounted Dr. Cain's rotate-position opinion because it was inconsistent with Plaintiff's reported activities. Tr. 42. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan*, 169 F.3d at 601-02. The ability to care for young children without help has been considered an activity that may undermine claims of totally disabling pain. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). However, an ALJ must make specific findings before relying on childcare as an activity inconsistent with disabling limitations. *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017). If the ALJ relies on this basis on remand to discount Dr. Cain's opinion, the ALJ must identify how the Plaintiff's activities are inconsistent with Dr. Cain's opinion that Plaintiff requires work that permits her to rotate between sitting, standing, and walking.

Finally, the ALJ discounted Dr. Cain's opinion because it was based on inconsistent information about Plaintiff's work as a hairdresser and caretaker of children. Tr. 42. Evidence that a claimant exaggerated her symptoms to a provider is a reason to reject the doctor's conclusions. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). An ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other

existing statements or conduct. *Smolen*, 80 F.3d at 1284. While the ALJ accurately noted that in 2011 Plaintiff reported caring for multiple young children while also working as a hairdresser, the ALJ's finding that Plaintiff told Dr. Cain that "she had to quit her job to stay home to look after children" mischaracterizes the record as the July 2012 medical note fully stated that "Plaintiff had quit her job to stay home to look after children, and because of her back pain, but she finds she cannot cope with the additional stress." Tr. 42, 733. *See also* Tr. 741 (Jan. 2012: "Stopped working Dec. 31 due to pain."). On this record, there is insufficient information to support a finding that Dr. Cain's opinion was based on Plaintiff's decision to stop working as a hairdresser in December 2011 and her care of children, rather than the objective medical evidence relating to her back, including the imaging and Dr. Cain's observations.

On remand, the ALJ is to reevaluate Dr. Cain's 2014 medical opinion.

      ii.    2016 Opinion

First, the ALJ discounted Dr. Cain's October 2016 opinion because it was unsupported by an explanation or medical findings and instead was based on Plaintiff's unreliable self-reports. Tr. 42-43. A medical opinion may be rejected by the ALJ if it is conclusory or inadequately supported by medical findings. *Bray*, 554 F.3d at 1228. Yet, if treatment notes are consistent with the opinion, a conclusory opinion, may not automatically be rejected. *Garrison v. Colvin*, 759

F.3d 995, 1014 n.17 (9th Cir. 2014); *Trevizo*, 871 F.3d at 667 n.4 ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form"). Here, the ALJ first noted that Dr. Cain did not provide a basis or refer to a single impairment in his 2016 opinion. Tr. 42. However, Dr. Cain was Plaintiff's treating physician since 2011 and had seen her with impaired gait and pain on several occasions. In addition, he had reviewed the imaging, which indicated that Plaintiff had multi-level mild to moderate facet degeneration at the L3-4, L4-5, and L5-S1, with increased uptake at the L4-5 and L5-S1, in additional to her fused lumbar. Tr. 660, 666. Given the objective medical evidence and Dr. Cain's observations and findings, this offered reason was not a specific and legitimate reason on this record.

Next, the ALJ noted that Dr. Cain appeared to base his opinion entirely on Plaintiff's September 2016 reports about her limitations. Tr. 42. A physician's opinion may also be rejected if it is too heavily based on a claimant's properly discounted complaints. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, the ALJ found Plaintiff's self-reports unreliable because the level of pain and limitations she reported during her medical examinations differed from the pain she reported during her testimony and during her social-security evaluation with Dr. Cain in September 2016. Tr. 42-43. As discussed more below, the language contained in the medical notes cited by the ALJ as supporting a

finding that Plaintiff "consistently stated that her pain therapy was adequate and that she was able to perform at adequate functional levels," Tr. 42, appeared to be stock language in these medical notes, as this stock language often differed from the visit-specific notes contained in the same medical notes. *See, e.g.*, Tr. 841 (also stating Plaintiff "is still limited functionally due to pain with prolonged sitting and standing and bending"); Tr. 845-46, 849, 852, 855 (also stating "gait slow and stooped"); Tr. 995 (also stating that Plaintiff describes pain "as sharp and aching. [Plaintiff] says that she is experiencing tingling in her leg even with her SCS (Boston Scientific). She tried the Mobic prescribed for her and she doesn't use it often as she doesn't like the way it makes her feel. She has had numerous injections and that did not help her pain. She is not getting as much pain relief from her medication as she had been."); Tr. 1002 (also reporting slowed gait); Tr. 1004-05 (also reporting that SCS implant shifted a bit and that worse pain was 9/10 and with slow gait). Therefore, it was not reasonable for the ALJ to rely on seemingly stock language in the medical records to discount Dr. Cain's opinion. On remand, the ALJ is directed to review the narrative portion of the treatment notes and not the stock language that conflicts with the narrative portion.

Third, the ALJ discounted Dr. Cain's opinion because it was inconsistent with Plaintiff's activities. Tr. 43. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan*, 169 F.3d at

601-02.  The ability to care for young children without help has been considered an activity that may undermine claims of totally disabling pain.  *Rollins,* 261 F.3d at 857.  On remand, if the ALJ relies on this basis to discount Dr. Cain's opinion, the ALJ must identify how the Plaintiff's activities were inconsistent with Dr. Cain's opinion.  *See Trevizo*, 871 F.3d at 675-76.

In summary, on remand, the ALJ is to reevaluate Dr. Cain's 2014 and 2016 opinions—the only treating physician opinions—and determine if a rotating-position limitation must be included in the RFC.

### 2.  Dr. Genthe

In July 2012, Dr. Genthe conducted a psychological evaluation of Plaintiff and diagnosed her with pain disorder, major depressive disorder (recurrent without psychotic features), anxiety disorder, and post-traumatic stress disorder.  Tr. 617-22.  Dr. Genthe opined that Plaintiff's psychological conditions were impacted by her physical pain symptoms; her ability to understand and remember short, simple instructions was good; her ability to understand and remember detailed instructions was fair; her ability to sustain an ordinary routine without supervision was good to fair; her ability to work with or near others without being distracted by them and respond appropriately to changes in the work setting was fair; her ability to interact appropriately with the public, get along with coworkers and/or peers, and respond appropriately to criticism from supervisors was poor; her prognosis was guarded;

and she was unlikely to function adequately in a full-time work setting until her

psychological symptoms had been managed more effectively for at least twelve

months. The ALJ agreed with Dr. Genthe's opinion that Plaintiff could sustain a

routine, work around others, respond appropriately to changes, and carry out

simple tasks and well-learned complex tasks, but otherwise assigned minimal

weight to Dr. Genthe's opinion. Tr. 43. Because Dr. Genthe's opinion was

contradicted in part by the opinion of Dr. Karim Saleh, Tr. 679-82, the ALJ was

required to provide specific and legitimate reasons to reject Dr. Genthe's opinion.

*Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Genthe's opinion because Dr. Genthe did not

explain why Plaintiff had poor social functioning and was psychologically

disabled. Tr. 43. A medical opinion may be rejected by the ALJ if it is conclusory

or inadequately supported by medical findings. *Bray*, 554 F.3d at 1228. A clinical

interview and mental status evaluation are objective measures. *Buck v. Berryhill*,

869 F.3d 1040, 1049 (9th Cir. 2017). Here, the ALJ determined that Dr. Genthe's

statement that Plaintiff's psychological impairments were not responding well to

medication was insufficient to support the opined limitations, particularly because

Plaintiff had told Dr. Genthe that she had no problems on her longstanding

psychiatric medication and she did not have any significant difficulty getting along

with others. Tr. 43-44, 674-78. Moreover, Dr. Saleh, a treating psychiatrist,

opined that Plaintiff could have superficial interaction with the public and occasional social interaction with coworkers—limitations that were included in the RFC. On this record, the ALJ's decision to discount Dr. Genthe's opinion that Plaintiff had more restrictive social functioning than as opined by Dr. Saleh, Tr. 681, because Dr. Genthe did not provide an explanation for a further social-function restriction was rational and supported by substantial evidence.

Second, the ALJ discounted Dr. Genthe's opinion because it was inconsistent with the overall record of Plaintiff's psychological state. Tr. 44. An ALJ may reject limitations "unsupported by the record as a whole." *Batson*, 359 F.3d at 1195. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion and the consistency of the medical opinion with the record. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Here, the ALJ noted that Plaintiff's generally normal psychological findings and reports of stable psychological impairments were inconsistent with Dr. Genthe's opinion. Tr. 44. The record reflects that Plaintiff's psychological state was largely stable, other than when dealing with very stressful family situations. Tr. 782-97, 814-25. The ALJ's finding is rational and supported by substantial evidence

Third, the ALJ discounted the unaccepted portion of Dr. Genthe's opinion because it was not supported by clinical findings but instead based on Plaintiff's

subjective reporting of her psychological symptoms. Tr. 43. A medical opinion may be rejected by the ALJ if it was inadequately supported by medical findings and based too heavily on the claimant's properly discounted complaints. *Bray*, 554 F.3d at 1228; *Tonapetyan*, 242 F.3d at 1149. Here, any error by the ALJ in relying on Plaintiff's self-reports is harmless because the ALJ identified other specific and legitimate reasons supported by substantial evidence for rejecting Dr. Genthe's opinion.

Fourth, the ALJ discounted Dr. Genthe's opinion because it was inconsistent with Plaintiff's reported activities. Tr. 42. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). The ability to care for young children without help has been considered an activity that may undermine claims of totally disabling pain. *Rollins,* 261 F.3d at 857. Here, the ALJ noted that Plaintiff's care for multiple young children, work, and other activities were inconsistent with Dr. Genthe's opinion. Tr. 44. That Plaintiff cared for five children (when in her care and not attending school), ran errands, and worked as a part-time hairdresser is a legitimate and specific reason, when considered cumulatively and in light of the fairly normal overall psychiatric observations contained in the medical records, to discount Dr. Genthe's opinion that Plaintiff had additional social-function limitations.

1    Finally, the ALJ discounted Dr. Genthe's opinion because Plaintiff

2    misrepresented her work activity during her evaluation.  Tr. 44.  Evidence that a

3    claimant exaggerated her symptoms to a provider is a reason to reject the doctor's

4    conclusions.  *Thomas,* 278 F.3d at 958.  The ALJ correctly identified an

5    inconsistency between the statement in Dr. Genthe's note that Plaintiff "has last

6    been employed January 2011," as compared to the remaining record, which

7    indicates that Plaintiff continued to work part-time as a hairdresser until December

8    2011, when her salon-station lease terminated.  Tr. 44.  Yet, this date inconsistency

9    is insufficient by itself to discount Dr. Genthe's opinion, which was offered in July

10   2012, months after either January 2011 or January 2012.  When Dr. Genthe

11   examined Plaintiff, she was no longer working as a hairdresser—therefore, this

12   date inconsistency is immaterial.  This error is harmless though because the ALJ

13   offered other specific and legitimate reasons, supported by substantial evidence,

14   for rejecting Dr. Genthe's social limitations.

15   **C. Plaintiff's Symptom Claims**

16       Plaintiff contends the ALJ failed to rely on clear and convincing reasons in

17   discrediting her symptom claims.  ECF No. 14 at 10-14.  Because the Court is

18   remanding this matter to reconsider the medical evidence, the ALJ is to reconsider

19   Plaintiff's symptom claims on remand.  In particular, the ALJ is to consider

20   Plaintiff's symptom claims related to her trigger thumb.  Second, the ALJ is to

reassess the medical evidence related to Plaintiff's spinal impairment because the 2013 imaging reflects a slight worsening of Plaintiff's back condition and supports, rather than discounts, Plaintiff's complaints that her back pain is more significant on her left side. *See* Tr. 667-69 (2013 MRIs revealed a largely stable T11-L3 fusion with moderate facet degeneration at L3-4 through L5-S1 "stable to somewhat increased from prior," a 3mm T2 hyperintense structure at the posterior aspect of the left L5-S1 facet joint (mostly likely a synovial cyst), and slight hypertrophic degenerative arthritis (mild narrowing of the intervertebral disc space) at L3-4); Tr. 666 (The lumbar bone scan imaging in August 2013 revealed that there was increased uptake in the posterior lateral lumbar spine at L4-L5 and L5-S1 on the left side).

Also, if the ALJ is to discount Plaintiff's back symptoms on the grounds of improvement with treatment, the ALJ is to consider the narrative contained in the medical reports, not only the report's stock language. For instance, the ALJ emphasized that Plaintiff consistently stated in 2014, 2015, and 2016 that her pain therapy was adequate, she was "performing her daily activities to her satisfaction, and that she was able to perform at adequate functional levels." Tr. 39 (citing Tr. 841, 844, 847, 850, 853, 995, 999, 1001, 1004, 1007, 1010, 1013, 1017, 1020, 1023, 1026, 1029, 1036, 1039, 1042, 1053, 1056, 1059, 1062, 1065, 1069, 1072, 1075). However, when the cited medical records are reviewed in their entirety,

ORDER - 27

they reveal that Plaintiff continued to have difficulties with back pain and that the cited portions of the medical records appear to be stock language, which was often inconsistent with the listed narrative reports by Plaintiff or the provider's observations in those same medical records. *See, e.g.*, Tr. 841 (stating Plaintiff "is still limited functionally due to pain with prolonged sitting and standing and bending"); Tr. 845-46, 849, 852, 855 ("gait slow and stooped"); Tr. 995 (Plaintiff describes pain "as sharp and aching. [Plaintiff] says that she is experiencing tingling in her leg even with her SCS (Boston Scientific). She tried the Mobic prescribed for her and she doesn't use it often as she doesn't like the way it makes her feel. She has had numerous injections and that did not help her pain. She is not getting as much pain relief from her medication as she had been."); Tr. 999 (reporting not getting relief from the SCS as hoped but that medication regimen was working well for her now); Tr. 1002 (slowed gait); Tr. 1004-05 (reporting that the SCS implant shifted a bit and that worst pain was 9/10 and with slow gait); Tr. 1007 (reporting that the pain is likely mainly due to her arthritis); *see also* Tr. 1011, 1013, 1017, 1020, 1023, 1026-27, 1037, 1043. Likewise, if the ALJ discounts Plaintiff's symptom claims on the grounds that Plaintiff offered inconsistent statements about the effects of treatment, the ALJ must consider Plaintiff's reports within the overall medical record and the specific medical record itself (e.g., stock language versus narrative language). *See, e.g.,* Tr. 516 ("Her

relief report form was reviewed. It shows excellent pain coverage of her normal discomfort for about 3-1/2 hours, at which point it looks like her pain started to return. The patient reports today that her pain continues to be better than it was.); Tr. 567 ("She reports that the rhizotomies that we had performed for her helped her significantly on the right side, but the left side continues to be somewhat painful."); Tr. 570 ("She has undergone rhizotomy, bilateral, of the L3-L4 and L4-L5 levels. She has done well on the right side, but reports her left side continues to bother her quite severely. She reports her pain to be about a 6 on the left side only and about a 2 maybe on the right side."); Tr. 654 ("She has had physical therapy over the last year which offered minimal relief only. She has had epidural and rhizotomy procedures done that offered no relief as well. She is currently on Fentanyl 50 mcg, hydrocodone 7.5/500 as well as Cyclobenzaprine for her pain medication regimen which offers moderate relief. She would like to find the source of her pain as this is affecting her quality of life. She wants to get off of pain medications if possible."); Tr. 698 ("The etiology of her pain is unclear. She has quite a bit of degenerative disease down below, primarily in the facets. This has been thoroughly worked up including facet blocks and rhizotomies to minimal relief. There is no obvious reason why she is having persistent pain and numbness in the leg. We will obtain a SPECT scan to see if the area at L3-4 lights up and unstable, and as such causing some transient neural impingement.").

In summary, on remand, the ALJ is to reevaluate Plaintiff's symptom claims in their entirety.

**D. Step Five**

Plaintiff faults the ALJ for relying on vocational-expert testimony that relied on an incomplete hypothetical and thereby contends the ALJ did not incorporate all of Plaintiff's restrictions into the RFC. ECF No. 14 at 18. For reasons discussed *supra*, the ALJ's consideration of Plaintiff's trigger thumb and Dr. Cain's opinion is not supported by substantial evidence. Because the ALJ's RFC did not contain a handling limitation with the right hand or a rotating-position limitation, the Court is unable to conclude that these errors are harmless. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).

**E. Remand**

Plaintiff urges this Court to remand for an immediate award of benefits. ECF No. 45 at 18-19. "The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985)). When the Court reverses an ALJ's decision for error, the Court "ordinarily must remand to the agency for further proceedings." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). However, "it would be an

abuse of discretion for a district court not to remand for an award of benefits"

when three conditions are met. *Garrison*, 759 F.3d at 1020 (citations omitted).

Under the credit-as-true rule, where 1) the record has been fully developed and

further administrative proceedings would serve no useful purpose; 2) the ALJ has

failed to provide legally sufficient reasons for rejecting evidence, whether claimant

testimony or medical opinion; and 3) if the improperly discredited evidence were

credited as true, the ALJ would be required to find the claimant disabled on

remand, the Court will remand for an award of benefits. *Revels v. Berryhill*, 874

F.3d 648, 668 (9th Cir. 2017). Even where the three prongs have been satisfied,

the Court will not remand for immediate payment of benefits if "the record as a

whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759

F.3d at 1021.

Here, further proceedings are necessary. As discussed *supra*, the ALJ

improperly considered Plaintiff's trigger thumb and misweighed Dr. Cain's

opinions. However, there is insufficient information as to whether there are

available jobs that Plaintiff could perform, even if Plaintiff is limited to frequent

handling and grasping with her right hand and limited to positions that allow her to

rotate between sitting, standing, and walking. Further proceedings are necessary

for the ALJ to weigh the medical evidence related to Plaintiff's physical abilities,

including the evidence submitted to the Appeals Council[4] and any other evidence

the ALJ deems necessary to fully consider Plaintiff's physical limitations,

including possibly a consultative examination. The ALJ is to conduct a new

sequential analysis, including reconsidering Plaintiff's physical symptom

testimony, in light of the new analysis of the medical evidence relating to

Plaintiff's physical abilities.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the

ALJ's decision is neither supported by substantial evidence nor free of harmful

legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff

REVERSING and REMANDING the matter to the Commissioner of Social

---

[4] On remand, the ALJ is to consider the 2017 opinion and medical evidence that

was rejected by the Appeals Council. Tr. 9-10, 16-26, 56-59. *See, e.g., Morton v.*

*Colvin*, 2:15-cv-00034-RMP, 2016 WL 1089264 (E.D. Wash. Mar. 18, 2016).

ORDER - 32

Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED June 25, 2019.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 33